IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                      CV 13-846 RB/WPL
                                                        CR 11-918 RB

CARLOS TITUS GIBSON,

      Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

This matter is before me on Carlos Titus Gibson's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (CV Doc. 3.)[1] Since Gibson's claim may be resolved on the record alone, I have not conducted an evidentiary hearing. I recommend that the motion be denied.

### BACKGROUND

As part of a plea agreement, Gibson pleaded guilty to one count of possession with intent to distribute a mixture and substance containing a detectable amount of cocaine base and aiding and abetting, plus one count of felon in possession of a firearm. (CR Docs. 16, 17.) On August 16, 2012, Gibson was sentenced to a prison term of 63 months followed by three years of probation. (CR Doc. 31.) The judgment in the criminal case was filed on August 17, 2012. (CR Doc. 32.) Gibson did not directly appeal his conviction or sentence. (CV Doc. 3 at 2; CV Doc. 8 at 3.)

---

[1] All citations to "CV Doc." refer to documents filed in the civil case, CV 13-846 RB/WPL. All citations to "CR Doc." refer to documents filed in the criminal case, CR 11-918 RB. Documents filed in both cases are cited by reference to the corresponding document in the civil case.

On September 5, 2013, the Court received a letter from Gibson postmarked August 30, 2013. (*See* CV Doc. 1 at 3.) In that letter, which is not a sworn statement, Gibson claims that he had been unable to meet the filing deadline for a § 2255 motion "due to being in transit and lockdown at the current prison and not being or having access to proper legal materials." (*Id.* at 1.) Accordingly, Gibson requested an extension of time "to better prepare for my motion." (*Id.*) Attached to this letter is an unsworn memorandum dated August 20, 2013, and signed by "R. Hawthorne, Unit Manager." (*Id.* at 2.) This memorandum states that Gibson had arrived at the Federal Correctional Complex in Beaumont, Texas, on July 22, 2013, and that since that time, "not all of [Gibson's] legal material which was mailed from his previous institution ha[d] arrived." (*Id.*) "Once all of [Gibson]'s legal material arrives," the memorandum continues, "it will be issued to him . . . ." (*Id.*)

On September 10, 2013, the Court denied Gibson's request for an extension of time to file a motion under § 2255. (CV Doc. 2.) In its Memorandum Opinion and Order, the Court noted that a decision as to equitable tolling of the one-year statutory limitation period was not ripe for decision because Gibson had not yet filed a § 2255 motion, and it expressly refused to construe Gibson's request for an extension of time as a § 2255 motion itself in the absence of any allegations sufficient to support such a claim. (*Id.* at 2 (citations omitted).)

The Court received Gibson's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody on September 17, 2013. (CV Doc. 3.) Although the postmark date for the document is not evident (*see id.* at 24), Gibson declares in the motion that it was placed in the prison mailing system on September 7, 2013 (*id.* at 13). Gibson brings two claims of ineffective assistance of counsel, one claim that his guilty plea was unlawfully induced or involuntary, one claim that his conviction was obtained by the use of

unconstitutionally seized evidence, and one claim that the judge in his criminal proceeding improperly participated in the plea negotiation process. (*Id.* at 4-9.) On the final substantive page of his motion, Gibson states that because of his prison transfer and the fact that his current prison was on lockdown when he arrived, he was not given his paperwork, allowed to use the prison law library, or able to obtain "the proper paper work to file this motion on time." (*See id.* at 12.) Gibson declares that the motion and its contents are made under penalty of perjury (*id.* at 13), and as such it has the same force and effect as a sworn pleading, *see* 28 U.S.C. § 1746.

In response, the Government filed a limited brief arguing that Gibson's § 2255 motion is untimely. (CV Doc. 8.) In essence, the Government contends that Gibson's conviction became final on August 31, 2012, that his deadline for filing his § 2255 motion expired one year later, and that his transfer and prison lockdown do not constitute grounds for equitable tolling of that deadline. (*See id.*) The Government asks that it be given additional time to supplement its response in the event that the Court finds that Gibson's motion is timely. (*Id.* at 8.)

Approximately one month later, Gibson filed a reply brief in which he argues that his prison's lockdown constituted an "extraordinary circumstance" justifying equitable tolling of the statutory limitations period. (CV Doc. 9.) In this unsworn filing, Gibson states that he did not have access to the law library and that his "numerous request[s] of staff (including his counselor) for a § 2255 application" were denied. (*See id.* at 2.) Gibson argues that these activities, combined with the request for extension that he mailed on August 30, 2013, constituted "due diligence to both notify the Court of my status[] and attempt[] to file my § 2255." (*See id.*) Finally, Gibson asks that the Court require the Government to respond to his § 2255 motion in full before deciding whether his motion was timely. (*See id.*)

## DISCUSSION

### I. Evidentiary Hearing

A court must conduct a hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also United States v. Lopez*, 100 F.3d 113, 119 (10th Cir. 1996). Under this standard, "the petitioner bears the burden of 'alleging facts which, if proved, would entitle him to relief.'" *Hatch v. Oklahoma*, 58 F.3d 1447, 1457 (10th Cir. 1995) (citations omitted), *overruled on other grounds by Daniels v. United States*, 254 F.3d 1180, 1188 n.1 (10th Cir. 2001) (en banc). Accordingly, if the prisoner alleges facts, which, if believed, cannot be grounds for relief, there is no need for a hearing. *See id.* Additionally, the petitioner's "allegations must be specific and particularized; conclusory allegations will not suffice to warrant a hearing." *Id.* (citations and internal punctuation omitted). If the claims relate to occurrences in the courtroom or evidence in the record, then the Court need not conduct a hearing. *Machibroda v. United States*, 368 U.S. 487, 494-95 (1962).

Because the record alone establishes that Gibson's § 2255 motion is untimely, and because Gibson has failed to establish that he is entitled to equitable tolling of the statutory limitations period, I will not hold an evidentiary hearing in this matter.

### II. Timeliness

The Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a one-year limitation on motions brought under § 2255. *See* 28 U.S.C. § 2255(f). This one-year period runs from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States

is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* Gibson bears the burden of establishing that his motion is timely. *See, e.g.*, *United States v. Fredette*, 191 F. App'x 711, 713-14 (10th Cir. 2006) (unpublished) (quoting *Price v. Philpot*, 420 F.3d 1158, 1165 (10th Cir. 2005)).

Gibson does not claim that new facts supporting his claims have been discovered or that the Supreme Court has recognized a new relevant right and made it retroactively applicable to his case. *See* 28 U.S.C. § 2255(f)(3)-(4). Nor does he argue or even suggest that the alleged delays constitute an unconstitutional or illegal impediment to the filing of his § 2255 motion. *See id.* § 2255(f)(2). Moreover, even if I were to construe Gibson's motion as arguing that such an impediment existed, this claim would fail. "[T]he Supreme Court has recognized lockdowns routinely cause delays in receiving legal materials, but also ruled that 'so long as they are the product of prison regulations reasonably related to legitimate penological interests, such delays are not of constitutional significance, even where they result in actual injury.'" *Pfeil v. Everett*, 9 F. App'x 973, 978 (10th Cir. 2001) (unpublished) (quoting *Lewis v. Casey*, 518 U.S. 343, 362 (1996)). Gibson does not allege that the lockdown in question was unrelated to "legitimate penological interests," and he provides no reason to believe that his transfer between prison facilities constituted anything more than "routine" practice. *See Clemons v. Kansas*, 384 F. App'x 734, 737 (10th Cir. 2010) (citing *Dodd v. United States*, 365 F.3d 1273, 1283 (11th Cir. 2004)) (considering whether transfers between prison systems justify equitable tolling of the one-year limitations period).

As the other provisions are inapplicable, Gibson's one-year limitation period started running on the date on which his judgment became final. *See* 28 U.S.C. § 2255(f)(1). Where, as here, the criminal defendant does not file a direct appeal, his conviction becomes final "upon the expiration of the time in which to take a direct criminal appeal." *See United States v. Prows*, 448 F.3d 1223, 1227-28 (10th Cir. 2006) (citation omitted). In Gibson's case, this time expired fourteen days after the August 17, 2012 entry of judgment against him—in other words, on August 31, 2012. *See* FED. R. APP. P. 4(b)(1)(A). Therefore, Gibson's one-year limitations period for filing a § 2255 motion expired on August 31, 2013. Because Gibson's § 2255 motion was filed after this date,[2] the motion is presumptively untimely.

### III.    Equitable Tolling

Still, the one-year statute of limitations may be subject to equitable tolling in "rare and exceptional circumstances," such as "when an adversary's conduct—or other uncontrollable circumstances—prevents a prisoner from timely filing." *Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir. 2000) (citations omitted). In particular, "when an inmate diligently pursues his claims and demonstrates that the failure to timely file was caused by extraordinary circumstances beyond his control," equitable tolling may be imposed. *See Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000); *see also Lawrence v. Florida*, 549 U.S. 327, 335 n.3 (2007) (assuming, without deciding, that equitable tolling in such circumstances may apply to AEDPA's one-year limitations period under 28 U.S.C. § 2244(d)(1)). The prisoner bears the burden of providing

---

[2] According to the prison mailbox rule, a pro se prisoner's § 2255 motion may in some cases be considered filed as of the date that the motion was given to prison officials for mailing. *See Philpot*, 420 F.3d at 1163-65 (10th Cir. 2006) (citing *Houston v. Lack*, 487 U.S. 266, 276 (1988); *United States v. Gray*, 182 F.3d 762, 764-65 & n.4 (10th Cir. 1999)). The prisoner bears the burden of establishing that the prison mailbox rule should be applied to his motion. *See id.* at 1165. Here, the Court received Gibson's motion on September 17, 2013, and Gibson declared under penalty of perjury that his motion was mailed on September 7, 2013. (CV Doc. 3 at 13.) Because the motion would be untimely on either date, I decline to address the applicability of the prison mailbox rule to Gibson's motion.

"specific facts" to establish that (1) extraordinary circumstances prevented him from timely filing his motion despite (2) his due diligence. *See Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008) (citations omitted).

The easy question is whether Gibson has shown that his prison transfer constitutes extraordinary circumstances justifying equitable tolling. He has not. Far from an extraordinary circumstance, transfers from one prison to another are "a routine practice." *Cf. Clemons*, 384 F. App'x at 737 (citation omitted) (addressing transfers between prison systems). Further, Gibson has failed to allege any specific facts regarding how his transfer forced a delay in the filing of his § 2255 motion. Although Gibson's motion for an extension of time included an unsworn memorandum from a prison official, this document only asserts that "not all of [Gibson's] legal material which was mailed from his previous institution ha[d] arrived" between his July 22 arrival and the August 20, 2013 memorandum date. (CV Doc. 1 at 2.) Neither Gibson nor the prison official states which documents had not arrived, how their absence prevented Gibson from timely filing his § 2255 motion, or if or when they ultimately caught up to him at the Beaumont facility. Without more, Gibson's prison transfer alone cannot constitute a ground for equitable tolling.

The prison lockdown presents a thornier question. In his habeas motion, under penalty of perjury, Gibson states that the Beaumont facility was on lockdown upon his arrival (CV Doc. 3 at 12), which an unsworn filing says occurred on July 22, 2013 (*see* CV Doc. 1 at 2), just over a month before his habeas filing deadline. He also attests that he was denied law library access and that he was not allowed to obtain "the proper paper work to file this motion" due to the lockdown. (CV Doc. 3 at 12.) In his unsworn reply, Gibson elaborates that he was unable to

procure the appropriate § 2255 forms during the lockdown. (CV Doc. 9 at 2.) Gibson never states when the lockdown ended or when he finally obtained the necessary § 2255 forms.

In *United States v. Gabaldon*, a federal prisoner filed his § 2255 motion thirty-six days after his deadline for doing so. *See* 522 F.3d 1121, 1123 (10th Cir. 2008). In response to the district court's concern that his petition was untimely, the prisoner filed a statement, made under penalty of perjury, saying that he had been placed in segregation almost two months before his filing deadline and that prison officials had confiscated all of his legal materials at that time. *Id.* He also attested that he made numerous written and verbal requests for his legal materials, but these materials were not returned to him until fourteen days after his filing deadline had passed, when the lockdown ended. *Id.* Additionally, the prisoner filed a statement under penalty of perjury from a cellmate, copies of his written requests to prison staff, and a memorandum from a prison employee, all of which supported his claims. *See id.* Finally, the prisoner filed an unsworn statement explaining that he had mailed his legal materials to his mother for typing after prison officials had returned them to him, thereby explaining the remainder of his delay in filing the motion. *See id.* at 1123-24.

On appeal, the Tenth Circuit observed that "the complete seizure of *all* legal materials" while the prisoner was in segregation appeared to be in contravention of federal regulations, *see id.* at 1125, and that a prisoner's right to "reasonable access to legal materials" could not rest on the fact that the prisoner was in segregation for disciplinary reasons, *see id.* at 1125-26. The court also agreed with two other circuits that had determined in similar cases, *see id.* at 1125 (citations omitted), that the "complete confiscation of [the prisoner]'s legal materials just weeks before his filing deadline" qualified as a situation where "an adversary's conduct . . . [had] prevent[ed] a prisoner from timely filing," *see id.* at 1124-26 (quoting *Gibson*, 232 F.3d at 808)

(internal quotation marks omitted). Accordingly, the Tenth Circuit found that the prisoner's circumstances counted as "extraordinary" for equitable tolling purposes. *See id.* at 1126. Further, the court held that the prisoner's sworn and unsworn filings sufficiently demonstrated that he had been diligent in his efforts to pursue his claims despite the segregation order. *See id.* at 1126-27.[3]

Gibson's case is distinguishable from *Gabaldon* in important ways. First, even overlooking the fact that this case involves a lockdown rather than prisoner segregation, Gibson has not sufficiently shown that any of his legal materials, much less *all* of them, were unavailable because of the lockdown. As previously noted, the unsworn memorandum from "R. Hawthorne" simply states that "*not all* of [Gibson]'s legal material" had arrived at the Beaumont facility as of August 20, 2013. (CV Doc. 1 at 2 (emphasis added).) Moreover, Hawthorne attributes the delay in the delivery of some documents to Gibson's recent transfer (*see id.*); he does not even mention the existence of a lockdown, much less affirm that any materials were kept from Gibson because of a lockdown. Indeed, the memorandum plainly states that Gibson's legal documents would be issued to him once they arrived, without any mention of a possible delay due to a lockdown. (*See id.*)

Second, even assuming that some documents were delayed by the lockdown, and taking as true Gibson's allegation that he was unable to access the law library during this time, it does not appear that these alleged impediments violated any applicable laws or regulations. The regulation cited in *Gabaldon*, which requires prison facilities to provide prisoners in administrative or disciplinary segregation "a means of access to legal materials," *see* 522 F.3d at 1125 (quoting 28 C.F.R. § 543.11(j)) does not purport to apply to prisoners on lockdown.

---

[3] Despite these conclusions, the Tenth Circuit did not determine that the § 2255 filing at issue in *Galbadon* was timely. *See Gabaldon*, 522 F.3d at 1126. Instead, because the Government had yet to enter an appearance and had not had an opportunity to contest the prisoner's allegations, the court remanded the case to the district court. *See id.* at 1124 n.3, 1126.

9

Additionally, in unpublished caselaw, the Tenth Circuit has repeatedly refused to find that an otherwise legitimate lockdown constitutes an unlawful or extraordinary circumstance simply because the lockdown delays the delivery of legal materials or prevents access to a prison law library. *See, e.g.*, *Jones v. Taylor*, 484 F. App'x 241, 242-43 (10th Cir. 2012) (unpublished); *Pfeil*, 9 F. App'x at 978.

Third, Gibson has not met his burden to provide specific facts regarding the duration of the lockdown. Unlike the prisoner in *Gabaldon*, Gibson has not shown that the lockdown in question extended past his filing deadline. In fact, although Gibson claims that the Beaumont facility was in lockdown when he arrived on July 22, 2013 (*see* CV Doc. 1 at 2; CV Doc. 3 at 12), he does not say in any of his filings when the lockdown ended. This is important because "isolated periods of lockdown do not provide 'extraordinary circumstances,'" *see Hughes v. McCann*, 521 F. Supp. 2d 750, 755 (N.D. Ill. 2007) (equitable tolling under § 2244(d)(1)), particularly where the prisoner fails to show specifically how such a lockdown prevented him from meeting his § 2255 deadline, *see Phares v. Jones*, 470 F. App'x 718, 719 (10th Cir. 2012) (unpublished) (citations omitted) (equitable tolling under § 2244(d)(1)). Whereas the prisoner in *Gabaldon* apparently "would have met the one-year deadline had prison officials not seized his materials," *see* 522 F.3d at 1126, Gibson's failure to allege specific facts regarding the duration of his facility's lockdown makes it impossible to determine whether the lockdown truly constituted extraordinary circumstances.

Finally, though Gibson asserts that he was diligent in his efforts to pursue his § 2255 motion despite the lockdown, his support for this assertion is nowhere near as strong or reliable as that seen in *Gabaldon*. In that case, the prisoner's description of his diligent efforts was supported by his own statement under penalty of perjury, a statement under penalty of perjury

10

from his cellmate, copies of his written requests to prisoner staff, and a facility memorandum conceding that the prisoner had been denied access to all legal materials while in segregation. *See* 522 F.3d at 1123. By contrast, Gibson does not discuss any of his purportedly diligent efforts in the one document that he has submitted under penalty of perjury, namely the § 2255 motion itself. (*See* CV Doc. 3 at 12, 13.) Nor does Gibson provide any other evidence of such efforts, other than an unsworn reply to the Government's response in which he simply states that he "made numerous request[s]" for legal paperwork and law library access during the lockdown. (CV Doc. 9 at 2.) This unsworn "self-serving declaration[]" does not suffice to support a request for equitable tolling. *See, e.g.*, *Pfeil*, 9 F. App'x at 979; *Thome v. Roberts*, No. 05-3099 SAC, 2005 WL 2133710, at *3 (D. Kan. Sept. 1, 2005) (unpublished).

Whereas *Gabaldon* is distinguishable from Gibson's case, several unpublished Tenth Circuit opinions released since that decision are more analogous. In *Dill v. Workman*, decided only three months after *Gabaldon*, the Tenth Circuit refused to find that a seventy-four-day prison lockdown justified equitable tolling where the prisoner failed to demonstrate why that event was extraordinary and failed to explain why he did not file his habeas petition after the lockdown ended and before the expiration of the limitations period. *See* 288 F. App'x 454, 457 (10th Cir. 2008) (unpublished). Similarly, the court in *Jones* rejected equitable tolling where the prisoner failed to show how a six-month prison lockdown, complete with a prohibition on law library access, prevented him from timely filing his § 2254 petition when he had time to do so after the lockdown ended. *See* 484 F. App'x at 242-43. Most notably, the prisoner in *Phares* was subject to a lockdown that began two months before the expiration of his habeas filing period and that continued for another month after the filing deadline had passed; in fact, for the three months preceding that lockdown, the prisoner was also confined in administrative segregation.

*See* 470 F. App'x at 719. Nonetheless, the Tenth Circuit declined to impose equitable tolling, concluding that neither the lockdown nor the segregation constituted extraordinary circumstances in the absence of a sufficient showing of impediment and due diligence. *See id.* Like these prisoners, Gibson has failed to establish that his lockdown constituted anything more than a routine element of prison life, that it impeded his ability to timely file his § 2255 motion, or that he was diligent in pursuing his claims despite the supposed impediment.

## CONCLUSION

Gibson's § 2255 motion was filed after the expiration of the statutory one-year limitations period. *See* 28 U.S.C. § 2255(f). Given the lack of sufficient "specific facts" supporting his claims of extraordinary circumstances and due diligence, *see Yang*, 525 F.3d at 928, I find that Gibson has failed to meet his burden of demonstrating that equitable tolling is appropriate in his case. I therefore recommend that the Court deny Gibson's § 2255 motion (CV Doc. 3) as untimely.

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

_____
WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE